WILLIAMS *et al. v.* BREWTON *et al.*

No. 7152.    February 21, 1930.    Rehearing denied March 1, 1930.

*McElreath & Scott* and *J. H. Porter,* for plaintiffs in error.

*J. Lon Duckworth, J. B. McCallum, D. W. Matthews, Mitchell & Mitchell, H. W. Chambers, C. H. Feagan, R. B. Lambert, C. L. Padgett, G. G. Finch, and Harry L. Greene,* contra.

HINES, J. (After stating the foregoing facts.)

■ The liens of laborers and materialmen do not rest upon contract, but upon the law which gives to laborers and materialmen liens for labor performed and material furnished in the improvement of real estate. Therefore the exceptions to the judgment of the court below, upon the grounds just stated, are without merit. This contract is relied upon, not for the purpose of showing that the holders of these liens could sue to enforce its stipulations, but solely for the purpose of showing that this real estate was improved in pursuance of a plan or scheme for that purpose, entered into between the grantee and grantor in the security deed. The question for decision is whether, in these circumstances, the liens of laborers for work done, and of materialmen for material furnished, in the improvement of this real estate outrank the claim of the grantee in this security deed for the purchase-money of the real estate improved.

■ The title of the true owner of land can not be subjected to liens for material furnished or labor .done in its improvement, unless he expressly or impliedly consents to the contract under which the improvements are made. *Harman* v. *Allen* 11 *Ga.* 45; *Powers* v. *Armstrong,* 19 *Ga.* 427; *Callaway* v. *Freeman,* 29 *Ga.* 408; *Walker* v. *Burt,* 57 *Ga.* 21; *Rice* v. *Warren,* 91 *Ga.* 759 (17

S. E. 1032); *Reppard* v. *Morrison,* 120 *Ga.* 28 (47 S. E. 554). When, however, the vendor has in some way consented to the improvement of real estate by his vendee, or has expressly or impliedly authorized it, or has co-operated with the vendee in plans for the improvements, or has been active and instrumental in having the improvements made, such liens will attach to his property. 40 C. J. 111 (§ 111) cc. A materialman's lien will prevail over that of a vendor, and attaches to the property improved, if the contract of sale provided that the vendor should go on and build upon the premises. Henderson *v.* Connelly, 123 Ill. 98 (14 N. E. 1, 5 Am. St. R. 490). A vendor of real estate, who induces one who has a contract to purchase the same, to expend labor and material in improving the same, can not defeat the claims for liens by those who contribute their labor and material to enhance the value of the property. In such a case, in the absence of a controlling agreement, he can not insist that the mechanic's lien shall be subordinated to his title or interest in the realty. Kimball Co. *v.* Fehleisen, 184 Iowa, 1109 (169 N. W. 445). "The lien of a person who advances material for the erection of a house upon land in possession of the vendee under an executory contract of purchase is subordinate to the lien of the vendor who retains the legal title to secure deferred installments of the purchase-price, except in cases where the vendor himself promotes the improvement or causes it to be made." West *v.* Reeves, 53 Neb. 472 (73 N. W. 935). If a vendor and his vendee co-operate in plans for the erection of improvements upon real estate covered by their agreement, the interest of the vendor as well as that of the vendee is bound for the payment of liens for labor and material furnished for such improvements. Guiou *v.* Rickman, 77 Neb. 833 (110 N. W. 759, 124 Am. St. R. 877). Where an owner, who contracted to sell a tract of land, placed the purchaser in possession of the same, and before the transaction was closed and the legal title transferred he authorized the purchaser to have certain improvements made on the land, and the purchaser contracted for and had the improvements made, and after the owner had authorized the improvements he caused a deed, which his grantor had executed in blank, to be delivered to the purchaser, with the name of the purchaser inserted therein as grantee, instead of the owner, so that on the record the land appeared to have been directly conveyed from his grantor to

his vendee, and at the same time he took a mortgage from the purchaser for the balance of the purchase-money, those who furnished the material and labor for such improvements had liens which were superior to said mortgage, and such liens covered the interests which both the owner and the purchaser held in the land. White v. Kincade, 95 Kan. 466 (148 Pac. 607, Ann. Cas. 1916B, 667).

Under the authorities aforesaid, where the vendor of land, under an executory contract of sale, puts the vendee in possession, and consents to the improvement of the land by his vendee, or expressly or impliedly authorizes or has co-operated with the vendee in plans for its improvement, or has been active and instrumental in having the improvements made, liens of mechanics for material furnished and labor done in making such improvements are superior to the title of the vendor. In this case the Glendale Terrace Inc. sold and conveyed to Galloway a lot of land, at the same time executing and delivering to Galloway a warranty deed to the lot, and simultaneously therewith took from Galloway a deed to the lot to secure the payment of the purchase-money thereof. The loan deed contained a provision that the vendor therein, that is the owner of the lot, agreed that Galloway should have the right to place a permanent loan on the lot, and a house to be erected thereon, not to exceed 60 per cent. of the appraised value of the house and lot. Here the owner expressly agreed that the purchaser, who was the grantor in the security deed, would have the right to place a permanent loan on the lot, and the house to be erected thereon, not to exceed 60 per cent. of the appraised value of the house and lot. Here the owner expressly agreed that the purchaser could erect a house thereon, and that he could place a loan thereon not to exceed 60 per cent. of the appraised value of the house and lot. The security deed further provided that Galloway should have the right to place a payroll loan on said lot not to exceed $1,500, and that the grantee in the security deed would subrogate the purchase-money notes to the party making said payroll loan. This loan of $1,500 was to be paid off out of the proceeds of the permanent loan. The weekly payrolls were to be approved by the vendor of the lot. From these circumstances it seems conclusive that the vendor, who was the grantee in the security deed from Galloway, consented to the improvement of this property by Galloway, and

entered into an arrangement by which Galloway was to get the money for the payment of material furnished and labor done in making the improvements. The right to these liens would not depend upon the fact that Galloway should effect a loan on the property for the purpose of paying them off. These liens rest upon the foundation that the owner consented for the contractor or materialman to make the improvements; and with this consent materialmen who furnished material, or laborers who did labor, for the improvement of this lot became eo instanti entitled to liens. The provision authorizing Galloway to make a loan not to exceed 60 per cent. of the appraised value of the house and lot was made for the purpose of enabling him to pay for such material and labor, and the securing of such loan by him was not a condition precedent to the creation of these liens. So we are of the opinion that these liens were superior to the claim for the purchase-money, and that the judgment of the court below should be

*Affirmed. All the Justices concur, except Beck, P. J., and Atkinson, J., who dissent.*

BECK, P. J., dissenting. The determination of one controlling question decides the case upon its merits. That question is whether Brewton and the intervenors who joined with him, and for whose benefit he brought his petition, occupy the place or the relation of beneficiaries in the provision contained in the security deed executed on May 19, 1928, by S. G. Galloway to Glendale Terrace Inc., in consideration of $2100, to secure the repayment of which the deed was executed, which provision is in these words: "Glendale Terrace Inc. agrees that S. G. Galloway shall have the right to place a permanent loan on the above lot and a house to be erected thereon, not to exceed 60% of the appraised value of said house and lot." Brewton and the other defendants in error insist that they in equity should be treated as the beneficiaries of this part of the contract contained in the deed just referred to. The plaintiffs in error take the contrary position. The defendants in error urge the contention that by the reservation of the right on the part of S. G. Galloway to be allowed to place a permanent loan in the sum of 60 per cent. of the appraised value of the improved property, the rights of Glendale Terrace, of J. T. Williams, or of any one who claims under them by virtue of the transfer of this loan deed, would be subject to the claims of Brewton or the

materialmen or workmen whom he represented in this suit; that if this provision in the deed set forth above did not have the effect which the defendants in error claim for it, there was no necessity for placing such phraseology in the deed, and the clause is mere surplusage. In other words, it is insisted that this contract, or the portion of the contract under consideration, was made for the benefit of a third party, which the latter could enforce in a court of equity; and it is urged that the issue here presented falls within the ruling in *Sheppard* v. *Bridges* 137 *Ga.* 615, 621 (74 S. E. 245), where this court said: "In New York, which was the leading State in establishing the American rule, it was said that it was not every contract for the benefit of a third person which could be enforced by him; but that two things must concur,—the intent to benefit the third party, and the owing of some obligation by the promisee to the third party. When this combination occurs, it has been considered sufficient to create a right or interest in the beneficiary, which has sometimes been analogized to a trust, sometimes called an equity, and sometimes treated under other legal heads. In a full and valuable note to Baxter *v.* Camp, 71 Am. St. R. 169, 175 et seq. (71 Conn. 245, 41 Atl. 803, 42 L. R. A. 514), both rules are discussed, and the modifications of them in different jurisdictions. On page 187 (referring to the American rule) it is said: 'The rule has been variously stated as resting upon: 1. A trust relationship; 2. The equitable right of subrogation; 3. Agency; 4. Privity of contract by substitution; and 5. The broad equity of the transaction.'" And it is insisted further that this particular issue in the case is also covered by what was said by this court in *Crawford* v. *Wilson,* 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.) 773), where it was held that "The rule which obtains most generally in America is, that a person not a party to the contract may maintain an action on it if he is a party to the consideration, or the contract was entered into for his benefit; and if the person for whose benefit a contract is made has either a legal or equitable interest in the performance of the contract, he need not necessarily be privy to the consideration."

I can not agree that the question for decision is settled by either of these decisions. There is a clear distinction to be made between those two cases and the instant case. In the first of the two cases cited there was an agreement on the part of the obligor or promisor

to pay a certain amount of money to a certain named party; and it was held that while this agreement was made with one party it was for the benefit of the third party to whom the money was to be paid, and that the latter in an equitable suit could enforce this part of the contract. In the latter case the third party was a beneficiary because distinctly and individually named, and the thing to be done was specified for the benefit of the third party. Here there is no contract or covenant on the part of the grantor in the loan deed (Galloway) to do anything for any particular party, but the effect of the part of the contract under consideration was to give Galloway the right or privilege "to place a permanent loan" on the property conveyed, and to make the grantee's claim based upon the purchase-money notes inferior to the claim of the party making "the said payroll loan," and "the payroll loan is to be liquidated and paid out of the proceeds of the permanent loan." In this contract Brewton is not specified, nor the intervenors who adopted his equitable petition, nor is the benefit of the payroll loan confined to them; and I do not think that the amount which Galloway might have obtained as a loan is to be treated as having actually been made and as being a trust fund for the benefit of Brewton and the intervenors who adopt his petition. The court below must have taken an opposite view of this question in fixing the priorities of the claims. The equities of the defendants in error may be broad, but they are not sufficiently definite to make well-founded the claim which they assert; and the judgment allowing their claim should be reversed. I am authorized to say that Mr. Justice Atkinson concurs in this dissent.